# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANEY, INC., an Idaho corporation, doing business under the assumed name UTEST,<br><br>                                        Plaintiff,<br><br>v.<br><br>AXIUM BIORESEARCH, a California corporation, doing business as DrugExam; and SERGIUS ALBERT SALVATORE, an individual,<br><br>                                        Defendants. | Case No.:  3:23-cv-01990-RBM-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1) AND 12(B)(6); AND**<br><br>**(2) DENYING DEFENDANTS' MOTION TO STRIKE PURSUANT TO RULE 12(F)**<br><br>**[Doc. 18]** |

Pending before the Court is Defendants Axium BioResearch ("Defendant Axium") and Serguis Salvatore's ("Defendant Salvatore") (collectively, "Defendants") Motion to Dismiss Plaintiff Haney, Inc.'s First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and Motion to Strike Pursuant to Fed. R. Civ. P. 12(f) ("Motion"). (Doc. 18.)   Plaintiff Haney, Inc. ("Haney") filed an Opposition to the Motion ("Opposition") (Doc. 19), and Defendants filed a Reply ("Reply") (Doc. 20).

1

Pursuant to Civil Local Rule 7.1, the Court finds the instant matter suitable for determination on the papers and without oral argument. For the reasons set forth below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND[1]

Plaintiff brings the instant action against Defendants for false advertising and unfair business practices. Defendants previously filed a motion to dismiss Plaintiff's initial complaint, which was granted on August 1, 2024 for lack of Article III standing with leave to amend. (Doc. 14 at 4.)[2] Plaintiff filed the First Amended Complaint ("FAC") on August 21, 2024. (Doc. 15 ["FAC"].) On August 29, 2024, this action was transferred to the undersigned. (Doc. 16.) In the instant Motion, Defendants seek to dismiss the FAC, arguing primarily that Plaintiff has not suffered an injury sufficient to grant it Article III standing and that the FAC fails to state a claim under Rule 12(b)(6). (Doc. 18.)

In the FAC, Plaintiff asserts five causes of action for: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") (FAC ¶¶ 67–80); (2) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL") (*id*. ¶¶ 81–90); (3) violation of Idaho's Consumer Protection Act, Idaho Code §§ 48-601, *et seq.* ("ICPA") (*id*. ¶¶ 91–99); (4) violation of the Lanham Act, 15 U.S.C. § 1125(a) *et seq.* ("Lanham Act") (*id*. ¶¶ 100–108); and (5) intentional interference with a prospective economic advantage ("IIPEA") (*id*. ¶¶ 109–116).

### A.    The Parties

Advin Biotech, Inc ("Advin"), who is not a party to this action, is a San Diego-based developer and manufacturer of multi-level strip drug testing kits for private at-home use. (*Id*. ¶ 31.) Advin distributes its drug testing kits to resellers, who then repackage the kits

---

[1] The factual summary in this section reflects Plaintiff's allegations, not conclusions of fact or law by this Court. Well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] The Court cites the CM/ECF electronic pagination unless otherwise noted.

under their own private labels for resale to the general public.  (*Id.* ¶ 33.)

Plaintiff, an Idaho corporation doing business as "UTEST," is a reseller of Advin's drug testing kits that operates its business through its company website and various other online retailers such as Amazon.com and Walmart.com.  (*Id.* ¶ 22.)

Defendant Axium, a California corporation doing business as "DrugExam," is also a reseller of Advin's drug testing kits.  (*Id.* ¶¶ 23–24.)  Plaintiff and Defendant Axium both purchase the same or similar drug testing kits from the same manufacturer, Advin, and resell such kits to the general public through Amazon and Walmart's websites.  (*Id.* ¶ 23.)

Defendant Salvatore is the sole founder of Defendant Axium.  (*Id.* ¶ 25.)  He is also Defendant Axium's Chief Executive Officer ("CEO"), Secretary, Chief Financial Officer ("CFO"), and sole Director.  (*Id.*)  Defendant Salvatore previously worked for Advin until September 2020.  (*Id.* ¶ 41.)

**B.    Advin's Drug Testing Kits and Package Insert**

Since 2013, Advin has obtained 510(k) clearances from the United States Food and Drug Administration ("FDA") for 14 different drug testing kits.  (*Id.* ¶ 31.)  Its drug testing kits are 100% "Made in USA" (*id.* ¶ 31) and include "a cassette and cap, reactive strip, foil pouch, and two separate stickers" (*id.* ¶ 33).  Advin's drug testing kits also include a comprehensive written package insert which describes its research and preliminary analytical test results (the "Package Insert").  (*Id.* ¶¶ 31, 42.)

To develop its drug testing kits, Advin allegedly invested substantial time and financial resources "in conducting research aimed at creating" the Package Insert.  (*Id.*)

**C.    Requirements for the Manufacturing and Sale of Medical Devices**

There are certain requirements resellers must meet to use Advin's FDA accreditation and the Package Insert.  (*See id.* ¶¶ 34, 42.)  To use Advin's accreditation, distributors who purchase Advin's drug testing kits for resale to the general public, can obtain a Clinical Laboratory Improvement Amendments ("CLIA") certification.  (*Id.* ¶ 34.)  This certification is overseen by the FDA and ensures the quality of laboratory test assembling in the United States.  (*Id.*)  "Under CLIA regulations, clinical laboratories [i.e. *Advin*

3

*Biotech's resellers/distributors, to wit, Defendant Axium*] must apply for and receive both a state registration or license, and a federal CLIA certificate, before being permitted to accept samples for assembling purposes (i.e. resale)." (*Id.*)  A CLIA certification also allows distributors "to replicate and utilize Advin's documented analytical test results, as presented in the Package Insert, for the marketing and sale of their . . . private label drug test kits to the general public." (*Id.* ¶ 42.)

Additionally, Plaintiff alleges that California state law requires manufacturers to obtain a Medical Device Manufacturing License issued by the California Department of Health Services, Food and Drug Branch ("FDB") before they can lawfully manufacture medical devices. (*Id.* ¶¶ 9, 35.)

**D.    Defendant Axium's Drug Testing Kits**

Defendant Salvatore incorporated Defendant Axium on June 20, 2016, while he was still employed at Advin. (*Id.* ¶ 37; *see* Doc. 18-6, Ex. D at 2.)  Plaintiff alleges that, upon information and belief, from June 2018 to September 8, 2022, Defendants manufactured, marketed, and sold their "*DrugExam*" drug testing kits to the public without a Medical Device Manufacturing License from the FDB, as required under California law and FDA regulations. (*Id.* ¶¶ 12, 36.)  Plaintiff further alleges that from June 2018 to the present day, Defendants have purchased "knockoff" component parts similar to those used in Advin's drug testing kits, including test cassettes and cap, reactive strip, foil pouch, and two separate stickers, from manufacturers in India and China that are not FDA approved or made in the United States. (*Id.* ¶ 38.)  Defendants allegedly ordered, and continue to order, test cassettes and caps from Tonisha Electronic, based in New Delhi, India similar to those used in Advin's drug testing kits. (*Id.* ¶ 53; *see id.* ¶ 54 (comparison of Advin's and Defendant Axium's test cassette and cap).)  Defendants also allegedly ordered, and continue to order, similar reactive strips, foil pouches, and stickers from manufacturers based in China. (*Id.* ¶¶ 56–60 (comparison of Advin's and Defendant Axium's reactive strips, foil pouches, and stickers).)

From 2018 to the present day, Defendants allegedly used such components, that are not approved by the FDA or manufactured in the United States, to create and sell their own "*DrugExam*" drug testing kits.  (*Id*. ¶ 38.)  Yet, Defendants "unlawfully market[ed] their drug test[ing] kits for sale" to the "unsuspecting general public" as being FDA approved, and "Made in the USA."  (*Id*. ¶ 40.)

When Defendant Salvatore left his employment at Advin in September 2020, Defendant Axium allegedly "transitioned to becoming a distributor-reseller of [Advin] drug testing kits with the intent to purchase and resell drug testing kits to the general public under [its] private label 'DrugExam.'" (*Id*. ¶ 41.)  On or about September 20, 2020, Advin requested and received a CLIA certification from the FDA on behalf of Defendant Axium for Defendant Axium to become a reseller of its drug testing kits and use its FDA accreditation.  (*Id*. ¶ 42.)  The CLIA certification allowed Defendant Axium to "portray[ ] itself as a distributor-reseller of" Advin's FDA drug testing kits.  (*Id*. ¶¶ 44, 47.)  It also allowed Defendants to replicate and use the Package Insert for the marketing and sale of their "*DrugExam*" private label drug testing kits to the general public.  (*Id*.)

Plaintiff alleges that "[i]n an attempt to deceitfully portray [FDA] approval and 'Made in USA' origin for its drug testing kits, Defendant Salvatore strategically procured a limited quantity of drug testing kits on behalf of Defendant Axium from [Advin]."  (*Id*. ¶ 50.)  "However, this was nothing more than a fraudulent ruse, as Defendants clandestinely procured similar component parts as that of [Advin's] drug test[ing] kits from manufacturers in India and China at a cheaper price, without ever [having] to conduct any legally required analytical testing, thus unlawfully profiting."  (*Id*. ¶ 47.)

Although "Defendants' subject drug test[ing] kits were deceitfully comprised of components sourced from [foreign manufacturers], in stark contrast to [Advin's] genuine products" (*id*. ¶ 45), Defendants still continued to advertise on Amazon and Walmart's websites that their drug testing kits are " (1) U.S. FDA approved, and (2) made in the United States."  (*Id*. ¶¶ 44, 50–51.)

**E.    Unity of Interest**

On information and belief, Plaintiff alleges that from June 20, 2016 through November 2, 2019, Defendant Salvatore unlawfully operated Defendant Axium without appointing any corporate officers, corporate directors, or a registered agent for service of process.  (*Id*. ¶ 26.)  Defendant Salvatore allegedly never issued any common stock in Defendant Axium, never conducted a meeting of its board of directors, did not hold a shareholder meeting, and did not issue any corporate bylaws during the three-year time period or anytime thereafter.  (*Id*.)  Plaintiff further alleges that Defendant Salvatore never procured a business license in San Diego County and never filed a Statement of Information on behalf of Defendant Axium as required by the California Secretary of State.  (*Id*. ¶ 27.)   Plaintiff adds that during the relevant time period, Defendant Salvatore conducted business as "Axium Bioresearch, Inc.," although no such corporation exists.  (*Id*.)   Moreover, Defendant Axium allegedly had no employees other than Defendant Salvatore who paid himself and his wife, Diana Motina, as independent contractors.  (*Id*.) Plaintiff alleges, upon information and belief, that Defendant Salvatore used Defendant Axium to pay for personal expenditures, including his wife's, unrelated to any business operation.  (*Id*.)

## II.    <u>LEGAL STANDARD</u>

**A.    Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure ("Rule") 12(b)(1) permits challenges to a court's subject matter jurisdiction and includes a challenge for lack of Article III standing.  *See Chandler v. State Farm Mut. Auto. Inc. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  Article III, Section 2 the United States Constitution requires that a plaintiff have standing to bring a claim.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "[T]he 'irreducible constitutional minimum of [Article III] standing'" requires that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (citing *Lujan*, 504 U.S.

at 560). To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (cleaned up). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561.

## B. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556–57). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## C.    Federal Rule of Civil Procedure 9(b)

Rule 9(b) requires a plaintiff alleging fraud claims to "state with particularity the circumstances constituting fraud or mistake." This includes the "who, what, when, where, and how" of the fraudulent activity. *United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). "Rule 9(b) applies when (1) a complaint specifically alleges fraud as an essential element of a claim, (2) when the claim 'sounds in fraud' by alleging that the defendant engaged in fraudulent conduct, but the claim itself does not contain fraud as an essential element, and (3) to any allegations of fraudulent conduct, even when none of the claims in the complaint 'sound in fraud.'" *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1089–1090 (C.D. Cal. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d, 1097, 1102–06).

The Ninth Circuit and several district courts have applied Rule 9(b) to false advertising and consumer protection claims grounded in fraud. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–27 (9th Cir. 2009) (applying Rule 9(b) to claim for false advertising under the UCL); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-04 (9th Cir. 2003) (applying Rule 9(b) to claim for false advertising under the FAL); *Julian Bakery, Inc. v. Healthsource Int'l, Inc.*, Case No.: 16cv2594-JAH (KSC), 2018 WL 1524499, at *4–5 (S.D. Cal. Mar. 28, 2018) (citing cases applying Rule 9(b) to claims under the UCL and FAL). While the Ninth Circuit has not determined that Rule 9(b) applies to all Lanham Act claims, district courts have also applied Rule 9(b) to Lanham Act false advertising claims grounded in fraud. *See, e.g., EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) (applying Rule 9(b) to a false advertising claim under Lanham Act).

8

### III.    REQUEST FOR JUDICIAL NOTICE

In support of their Motion, Defendants filed a Request for Judicial Notice ("RJN"). (Doc. 18-1.)  Defendants request that the Court judicially notice five exhibits attached to the Declaration of James H. Turken (Doc. 18-2 ["Turken Decl."]) including: (1) several documents filed in San Diego Superior Court as part of a related court proceeding involving the Parties (Doc. 18-3 ["Ex. A"]; Doc. 18-4 ["Ex. B"]; Doc. 18-7 ["Ex. E"]); (2) a copy of Defendants' CLIA certifications from the FDA website (Doc. 18-5 ["Ex. C"]); and (3) Defendant Axium's articles of incorporation filed on June 20, 2016 (Doc. 18-6 ["Ex. D"]). Plaintiff does not challenge the RJN.  (*See generally* Doc. 19.)

A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim.  Fed. R. Civ. P. 12(d).  A court may take judicial notice of "matters of public record without converting a motion to dismiss into a motion for summary judgment."  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal citations omitted).  Moreover, under Federal Rule of Evidence 201(b), a court may take judicial notice of facts that are not subject to reasonable dispute because they are (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Finally, under the incorporation by reference doctrine, courts may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (cleaned up).

Applying these principles, the Court takes judicial notice of all five exhibits. Exhibits A, B, and E are the complaint, the second amended complaint, and a request for dismissal filed by Plaintiff in a prior related action before the San Diego Superior Court, respectively.  Defendants argue that the Court should take judicial notice of such filings because the "Superior Court Action and the present action arise out of the same or substantially identical transactions and happenings, involve the same parties, and call for

9

determination of substantially identical questions of law." (Doc. 18-1 at 3.)  In doing so, Defendants appear to recite the elements of preclusion (Doc. 18 at 6, 8 n.1), but do not raise such arguments in the Motion.  (*Id.* at 10–12.)  Although Defendants reference the state court proceedings in their factual background (*see id.* at 10–11), the state court filings are neither helpful to, nor relevant in, resolving the instant Motion.[3]  Nonetheless, the Court "may take judicial notice of the existence of unrelated court documents, although it will not take judicial notice of such documents for the truth of the matter asserted therein."  *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010); *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("[Courts] may take judicial notice of court filings and other matters of public record [as they] are readily verifiable and, therefore, the proper subject of judicial notice.") (cleaned up).

Exhibit C is a copy of Defendants' CLIA certification from the FDA website concerning several drug screening tests.  "Information on government agency websites has often been treated as properly subject to judicial notice."  *Molina v. Wash. Mut. Bank*, No. 09-CV-00894-IEG (AJB), 2010 WL 431439, at *3 (S.D. Cal. Jan. 29, 2010).  In this case, Plaintiff references Defendant Axium's CLIA certification in the FAC and does not otherwise dispute its accuracy.  (*See* FAC ¶ 42.)  As such, the Court finds "[i]t is appropriate to take judicial notice of this information, as it was made publicly available by [a] government [entity], and neither party disputes the authenticity of the web site[ ] or the

---

[3] Relatedly, Defendants claim that Plaintiff failed to file a Notice of Related Case as to the state court action in violation of this District's Civil Local Rule 40.1(f).  (Doc. 18 at 6; Doc. 20 at 3 n.1.)  Defendants, however, do not state the relief sought or otherwise substantiate this claim.  Local Rule 40.1(f) requires counsel for *either party* to file a notice when an action on file or about to be filed "is related to another pending action or proceeding on file in this or any other federal or state court . . . ."  S.D. Cal. Civ. 40.1(f) (emphasis added).  Pursuant to this Local Rule, Defendants filed a Notice of Related Case on November 28, 2023 (Doc. 6), to which Plaintiff filed an Opposition on December 5, 2023 (Doc. 9).  The Court therefore finds Defendants' arguments concerning the state court action are not relevant for purposes of resolving the instant Motion.

accuracy of the information displayed therein." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010); *see Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 878-79 (N.D. Cal. 2013) (collecting cases supporting the propriety of taking judicial notice of information on government agency websites including the FDA's premarket approval database). However, to the extent Defendants seek to judicially notice any facts that are subject to reasonable dispute and are inconsistent with the FAC, the Court must rely on the facts as alleged. *See United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) ("Pursuant to Federal Rule of Evidence 201, [courts] may also take judicial notice of 'matters of public record,' . . . but not of facts that may be 'subject to reasonable dispute.' . . . More specifically, [courts] may not, on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed.") (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001)).

Exhibit D is a copy of Defendant Axium's articles of incorporation. District courts routinely take judicial notice of articles of incorporation because they are public records. *See e.g.*, *Rhodes v. Sutter Health*, No. CIV. 2:12-0013 WBS DAD, 2012 WL 662462, at *3 (E.D. Cal. Feb. 28, 2012) (taking judicial notice of the articles of incorporation of California corporations because they are filed with the Secretary of the State of California); *Ostrander v. St. Columba Sch.*, Case No.: 3:21-cv-00175-W-LL, 2021 WL 3054877, at *2 (S.D. Cal. July 20, 2021) (same).

Accordingly, the Court **GRANTS** Defendants' RJN as to all five exhibits.

## IV.    DISCUSSION

Defendants seek to dismiss the FAC on the following grounds: (1) lack of subject matter jurisdiction under Rule 12(b)(1), arguing that Plaintiff has not established an injury-in-fact; (2) Plaintiff is not the real party in interest under Rule 17(a); and (3) failure to state a claim under Rule 12(b)(6), including under the heightened pleading standard of Rule 9(b) for claims sounding in fraud. (*See* Doc. 18 at 9–20.) Defendants further seek to strike Plaintiff's request for punitive damages under Rule 12(f). (*Id.* at 20–21.)

The Court is required to address jurisdictional issues, such as Article III standing, before proceeding to the merits. *See Alabama Legis. Black Caucus v. Alabama*, 575 U.S. 254, 270 (2015); *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1117 n.1 (9th Cir. 2017). Because Defendants' arguments under Rule 12(b)(1) and Rule 17 center on whether Plaintiff has standing to assert its claims, particularly as to whether it suffered an injury-in-fact or brings claims on behalf of third parties, the Court addresses those arguments first.

### A. Article III Standing

The Court previously dismissed Plaintiff's initial complaint for failure to adequately allege Article III standing. (Doc. 14.) In the instant Motion, Defendants argue that the FAC suffers the same fatal flaws. (Doc. 18 at 15–17.) Specifically, Defendants argue the Court lacks subject matter jurisdiction over this action because Plaintiff "fails to demonstrate how *Plaintiff* has suffered an injury in fact because its competitor did end up competing with it in the market." (*Id*.at 16 (emphasis added).) Defendants reason that "Plaintiff's entire [FAC] centers on allegations related to . . . non-parties, either rooted in allegations about non-party [Advin's] relationship with Axium and Salvatore . . . or about prospective consumers." (*Id*. at 9.) Plaintiff responds that the FAC sufficiently pleads: "(1) it suffered an 'injury-in-fact' from Defendants' false advertising; (2) the injury was traceable to Defendants' unlawful business practices; and (3) the injury will be redressed by a favorable decision awarding monetary damages." (Doc. 19 at 6.)

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561. Still, "each element must be supported . . . with the manner and degree of evidence required at the successive stages of litigation." *Id*.

In a false advertising suit, "a plaintiff establishes Article III injury if some consumers who bought the defendant's product under a mistaken belief fostered by the defendant

would have otherwise bought the plaintiff's product." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) (cleaned up). A plaintiff may allege a competitive injury for purposes of Article III standing "(1) by using lost sales data, that is 'actual market experience and probable market behavior,' or (2) 'by creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business.'" *Allbirds, Inc. v. Giesswein Walkwaren AG*, Case No. 19-cv-05638-BLF, 2020 WL 6826487, at *4 (N.D. Cal. June 4, 2020) (quoting *TrafficSchool.com*, 653 F.3d at 825). "In a lawsuit brought by a plaintiff against a competitor, claims that permit an inference of impending loss of profits due to the competitor's wrongful actions suffice to establish an injury in fact." *NJOY, LLC v. Imiracle (HK) Ltd.*, 760 F. Supp. 3d 1084, 1102 (S.D. Cal. 2024) (citing *Ass'n of Data Processing Servs. Orgs., Inc. v. Camp*, 397 U.S. 150, 152–53, (1970) (holding "[t]here can be no doubt" that plaintiffs "in a competitor's suit" satisfied injury in fact requirement where they alleged "some future loss of profits")). To do so, a plaintiff must provide at least two "links" in "a chain of inferences to show how that [the defendant's] false advertising could harm [the plaintiff's] business." *Allbirds*, 2020 WL 6826487, at *4.

Here, Plaintiff alleges that Defendants' allegedly false advertising deprived it of "rightful business opportunities and revenue" and that Plaintiff "suffered a significant loss of sales and market share, damaging its reputation and standing in the industry." (FAC ¶ 63.) Plaintiff's alleged harm constitutes cognizable competitive injuries. *See, e.g.*, *Dickinson v. Ryan Seacrest Enter., Inc.*, No. CV-18-2544- GW(JPRX), 2019 WL 3035090, at *7 (C.D. Cal. Mar. 26, 2019), *aff'd*, 839 F. App'x 110 (9th Cir. 2020) (finding Article III standing established in false advertising and endorsement suit where the plaintiff alleged injury to reputation and loss of goodwill); *Levitt v. Yelp! Inc.*, No. C 10-1321 MHP, 2011 WL 13153230, at *5 (N.D. Cal. Mar. 22, 2011) (finding allegations of harm to reputation and loss of business sufficient to confer Article III standing). Because the FAC does not provide "actual market experience and probable market behavior," Plaintiff must establish a chain of inferences showing that Defendants' allegedly false advertising caused its competitive injuries. *See TrafficSchool.com*, 653 F.3d at 825.

As the first link in this chain of inference, Plaintiff alleges, and Defendants do not dispute, that both companies are direct competitors because they resell "the same or similar drug testing kits from the same manufacturer," Advin, through the same websites for the same revenue. (FAC ¶ 23.)

As the second link, Plaintiff claims that Defendants' allegedly false advertising of their drug test kits as "FDA Approved" and "Made in the USA" "was and is likely to influence relevant consumers' purchasing decisions." (*Id*. ¶¶ 63, 85.) Indeed, "if a product has been approved [by the FDA], consumers may take some assurance that it has been properly tested and meets the agency's minimum quality standards. This makes an FDA-approved product a more attractive product, whether at the wholesale, retail, or end user level." *JHP Pharms., LLC v. Hospira, Inc.*, 52 F. Supp. 3d 992, 1000 (C.D. Cal. 2014) (analyzing a claim under the Lanham Act).

Plaintiff further claims that Defendants' drug testing kits are not FDA approved in violation of California's Sherman Law and several other state regulations, which "created an unfair sales advantage for [D]efendants, misleading consumers into purchasing their inferior, counterfeit products over [P]laintiff's legitimate offerings." (FAC ¶ 63; *see id*. ¶ 11.) Indeed, "when a competitor gains an unfair advantage by sidestepping regulatory obligations, it is entirely plausible for a court to conclude that economic harm exists for entities competing in the same market while adhering to the rules." *NJOY, LLC*, 760 F. Supp. 3d at 1103.

As the final link, Plaintiff claims that Defendants created their own drug testing kits with less expensive components from foreign manufacturers and were thereby able to assemble and sell its kits "at a significantly lower price than Plaintiff, who purchased drug test kits for resale from Advin." (FAC ¶¶ 63, 65.) Such allegations further support an inference that consumers chose Defendants' products over Plaintiff's as a result of its allegedly false advertising. *See Vampire Fam. Brands, LLC v. MPL Brands, Inc.*, No. CV 20-9482-DMG (ASX), 2021 WL 4134841, at *7 (C.D. Cal. Aug. 6, 2021) (holding a "'chain of inferences showing how defendant's false advertising could harm plaintiff's

business' that is sufficiently imminent to satisfy Article III standing" was established where defendant competitor made a lower-cost product and paid less in taxes than other competitors by marketing and selling "cocktails" made with agave wine instead of distilled spirits) (quoting *TrafficSchool.com*, 653 F.3d at 825).

Based on the facts alleged, the Court finds it reasonable to infer that the challenged advertisements may divert sales from Plaintiff to Defendants.  Plaintiff has therefore sufficiently established an injury-in-fact for purposes of Article III standing.  For the same reasons, Defendants' alleged conduct is "fairly traceable" to Plaintiff's alleged competitive injuries.  *See Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-CV-01280-JST, 2021 WL 11593043, at *4 (N.D. Cal. Aug. 16, 2021) (finding the "fairly traceable" requirement for Article III standing was satisfied where plaintiff alleged a causal link between the allegedly false advertising and its lost profits even if the advertisements were not the only reason for its reduced sales); *see also Washington Env't Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013) (noting the "fairly traceable and redressability components for standing overlap and are two facets of a single causation requirement") (cleaned up).

Accordingly, Plaintiff has established Article III standing and the Motion to Dismiss under Rule 12(b)(1) is **DENIED**.

## B. Real Party in Interest

Defendants argue that Plaintiff is not the real party in interest to this action, as required under Rule 17, because the "FAC is entirely centered on allegations that Axium is misusing the drug testing kits of non-party Advin." (Doc. 18 at 18.)[4]  Defendants appear to object to Plaintiff's ability to bring this suit as part of their standing challenge.

---

[4] Defendants also argue that "Plaintiff is not the only improper party in this action [because] Defendant Axium [was] erroneously sued as 'Axium Bioreseach, doing business as DrugExam,' even though [Defendant] Axium does not do business as DrugExam." (Doc. 18 at 9 n.2 (citing Doc. 18-8 ["Salvatore Decl."] ¶ 5); *see* Doc. 20 at 3, 9.)  However, Defendants do not state the relief sought, do not identify who the "correctly named Defendant" should be, and fail to substantiate their argument with any legal support.

15

Rule 17(a) requires that all actions "be prosecuted in the name of the real party in interest." However, "Rule 17(a) does not give [a party] standing; 'real party in interest' is very different from standing." *See Kent v. N. Cal. Reg'l Office of Am. Friends Serv. Comm.*, 497 F.2d 1325, 1329 (9th Cir. 1974). While Rule 17 does not define "real party in interest," the Ninth Circuit has held that the real party in interest is the party with the right to enforce a claim under the applicable substantive law. *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1038 (9th Cir. 1986); *see Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093– 94 (9th Cir. 2004) ("Whether [the plaintiff] is the real party in interest under [Rule] 17(a) in this federal diversity suit is dependent upon whether [the plaintiff] is a proper party to maintain this action under applicable state law."). Indeed, "[Rule] 17 governs only the right of [a plaintiff] to bring the suit." *Id.*

Here, beyond stating that "[n]one of the factual allegations relate whatsoever to Plaintiff's right to sue under substantive law" (Doc. 18 at 18), Defendants neglect to substantiate their contentions. Defendants do not identify the applicable standard for determining Plaintiff's right to sue, do not attempt to apply such a standard, and do not otherwise provide any legal support for their argument. Defendants also invoke Rule 17 but do not state the relief requested.[5] Accordingly, Defendants' Motion is **DENIED** on this basis.

## C.    Failure to State a Claim

Based on the same allegedly false advertisements, Plaintiff alleges that Defendants engaged in: (1) unfair competition, including unlawful, unfair, and fraudulent business practices, in violation of the UCL (FAC ¶¶ 72–74); (2) false advertising in violation of the FAL (*id.* ¶¶ 83–85); (3) unfair competition in violation of the ICPA (*id.* ¶¶ 97–99); (4) false

---

[5] The Court notes that it "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3).

advertising in violation of the Lanham Act (*id*. ¶¶ 100–108); and (5) intentional interference with a prospective economic advantage (*id*. ¶¶ 109–116).

Defendants argue that Plaintiff's claims are "intertwined with one another" and fail to meet the minimum pleading standards. (Doc. 18 at 23, 25.) Specifically, Defendants seek to dismiss the UCL, FAL, ICPA, and Lanham Act claims because: (1) Defendant Axium had obtained a CLIA certification from the FDA which Defendants claim makes their drug testing kits "FDA approved" (Doc. 18 at 23–24); and (2) Plaintiff's false advertising allegations based on Defendants' use of the Package Insert do not meet Rule 9(b)'s heightened pleading standard (*id*. at 23–25). Defendants also argue that Plaintiff's intentional interference with prospective economic advantage claim fails because Plaintiff does not identify any economic benefits it was likely to receive. (*Id*. at 18–20.) Finally, Defendants argue that Plaintiff fails to state a claim against Defendant Salvatore based on the alter ego doctrine. (*Id*. at 18–20.)

Because Plaintiff's claims rely on the same allegedly false statements, the Court finds Plaintiff's claims are similarly grounded in fraud and therefore applies Rule 9(b) to determine the legal sufficiency of the FAC. (*See supra* II.C.) The Court first addresses Plaintiff's false advertising claims before turning to the remaining claims.

### 1.    FAL and Lanham Act (Second and Fourth Causes of Action)

Section 43(a) of the Lanham Act is designed "to protect persons engaged in . . . commerce against unfair competition," making "actionable the deceptive and misleading use of marks." 15 U.S.C. § 1125(a). The FAL similarly prohibits "untrue or misleading" advertising "which is known, or which by the exercise of reasonable care, would be known to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. Claims pursuant to the FAL are subject to the heightened pleading requirements of Rule 9(b). *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1123 (C.D. Cal. 2010) (citation omitted) (noting a complaint must plead "'the who, what, when, where, and how' of the misconduct charged" under the FAL); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–104 (9th Cir. 2003).

Because Plaintiff's FAL and Lanham Act claims are premised on the same allegedly false statements, the Court evaluates the sufficiency of such false advertising claims collectively.  *See Allergan USA, Inc. v. Prescribers Choice, Inc*, 364 F. Supp. 3d 1089, 1108 (C.D. Cal. 2019) ("Claims under the FAL are substantially congruent to those under the Lanham Act.").  To state a false advertising claim under § 43(a) of the Lanham Act, Plaintiff must allege:

> (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product.

*Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008) (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002)).

Defendants argue that Plaintiff has failed to establish the first, second, and fifth elements of its Lanham Act claim.  (Doc. 18 at 23–25 (arguing the FAL claim does not identify Plaintiff's "purported harm").)  Defendants also argue that Plaintiff does not "identify *any* false statement, let alone when, where, how and what was false about it, or to whom it was made."  (*Id*. at 24.)[6]  In its Opposition, Plaintiff asserts that the FAC alleges Defendants made three false statements on Amazon's website "that its drug test kits were[:]

---

[6] Defendants also claim the FAC "raises fair notice concerns" because the title of Plaintiff's claim states a cause of action under § 43(a)(1)(A) and "does not clearly state if Plaintiff is asserting a 'false association' claim . . . or a 'false advertising' claim."  (Doc. 18 at 23.)  However, Plaintiff expressly recites the elements of a false advertising cause of action (*see* FAC ¶¶ 101–103, 106), relies on three primary advertisements, and explains why the advertisements are allegedly false and misleading.  Thus, Defendants have "ample notice of the particular misconduct so that they can defend against the charge."  *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1176 (S.D. Cal. 2010) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up)).

(I) approved by the [FDA], (II) 'Made in the USA' and (III) have a 99% success rate in the Product Insert." (Doc. 19 at 24.)

As the Parties only dispute the first, second, and fifth elements of the Lanham Act claim, the Court addresses only the disputed elements for each of the three alleged statements. For the reasons discussed below, the Court finds that Plaintiff has stated a false advertising claim based on Defendants' alleged statements that their drug testing kits are "FDA approved" and "Made in the USA." However, Defendants' alleged use of, and statements contained in, the Package Insert do not support a false advertising claim under the FAL and Lanham Act.

### a. Falsity

Plaintiff alleges that Defendants' advertisements made false statements about its drug testing kits being "FDA approved" and "Made in the USA." (FAC ¶ 20.) Defendants seemingly challenge the first element of Plaintiff's false advertising claim, arguing that Defendant Axium does possess FDA approval for its products. (Doc. 18 at 24; *see also id*. at 23 (asserting the same argument against UCL claim).)

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland*, 108 F.3d at 1139. "[A]t the pleading stage the plaintiff need only allege specific misleading statements and explain why they are misleading in accordance with Rule 9(b)." *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 636 (N.D. Cal. 2019). The Ninth Circuit has noted that "a Lanham Act claim could be pursued for injuries suffered by a competitor as a result of a false assertion that [FDA] approval had been granted" where "it was clear that an affirmative statement of approval by the FDA was required before a given product could be marketed and that no such FDA approval had been granted." *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924–25 (9th Cir. 2010).

In this case, the Lanham Act claim is premised on Defendants' affirmative statements that its drug testing kits are "FDA approved." (FAC ¶¶ 1, 3.) Plaintiff claims

drug testing kits are medical devices that require FDA approval.  (*Id.* ¶¶ 11).  *See PhotoMedex*, 601 F.3d at 924–25.  Relying on its CLIA certification, Defendants argue that its "products are approved by the FDA and made in the United States."  (Doc. 20 at 8 (citing Doc. 18-1, Ex. C).)

Plaintiff acknowledges that Defendant Axium received its CLIA certification on September 20, 2020.  (FAC ¶ 42.)  Plaintiff also alleges that Advin obtained 501(k) clearances from the FDA for 14 drug testing kits (*id.* ¶ 31) and that a CLIA certification allows re-sellers to use Advin's accreditation to manufacture, market, and sell Advin's drug testing kits (*id.* ¶¶ 34, 42, 45).  Instead of re-selling Advin's drug testing kits, however, Plaintiff claims that Defendant Axium manufactured and sold its *own* kits using components sourced from unregistered, third-party manufacturers located in China and India that were not tested or approved by the FDA.  (*Id.* ¶¶ 2, 38–39, 45, 51.)  Specifically, Plaintiff alleges that Defendants obtained reactive strips from a Chinese-based manufacturer and "test cassettes and caps from Tonisha Electronic, based in New Delhi, India."  (*Id.* ¶¶ 55–56.)  The FAC also contains photos showing the differences between Advin's components and those used by Defendant Axium.  (*Id.*)

At the pleading stage, the Court finds these allegations sufficient to satisfy the first element of its Lanham Act claim.  Although Advin's drug testing kits received FDA approval, and the CLIA certification allows Defendant Axium to manufacture and sell Advin's kits, Plaintiff plausibly alleges that Defendant Axium's drug testing kits are created with parts that were not produced by an FDA-approved or domestic manufacturer. Viewing these facts in the light most favorable to Plaintiff, the Court finds Plaintiff pleads sufficient facts to support that Defendants made false statements about the FDA approval status and domestic manufacturing of its drug testing kits.  *See PhotoMedex*, 601 F.3d at 924–25; *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (reversing dismissal of UCL claims based on allegedly deceptive product packaging as inappropriately decided on a motion to dismiss).

3:23-cv-01990-RBM-JLB

### b. Commercial Advertisement

Defendants argue that Plaintiff fails to explain how the Package Insert "could constitute a false statement to a prospective consumer when it is, by definition, inside the packaging." (Doc. 18 at 23, 25.)

To constitute commercial advertising or promotion under the Lanham Act, a representation must be, among other things, "for the purpose of influencing consumers to buy defendant's goods or services, and . . . sufficiently disseminated to the relevant purchasing public." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)). A false advertising claim must be "likely to influence the purchasing decision" of consumers. *Southland*, 108 F.3d at 1139. Indeed, Plaintiff "has the burden of pleading at least some facts tending to show that the alleged implied message is actually transmitted to the consumer." *JHP Pharms.*, 52 F. Supp. 3d at 1005 (citing *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 258 (9th Cir.1995)).

Here, Plaintiff alleges Defendant Axium's drug testing kits include the Package Insert containing information about Advin's preliminary analytical findings concerning its own drug testing kits. (FAC ¶¶ 2, 31.) In its Opposition, Plaintiff claims that Defendants falsely stated their drug testing kits "have a 99% success rate in the Product Insert." (Doc. 19 at 24.) However, as Plaintiff did not include this statement as a factual allegation in the FAC, the Court does not consider it in determining the sufficiency of Plaintiff's pleading. *See Marron v. Saha*, Case No.: 19cv1344-BAS (MSB), 2020 WL 2467062, at *3 (S.D. Cal. May 13, 2020) ("Under [Rule] 7(a), a plaintiff's opposition to a motion to dismiss does not constitute pleadings, and thus 'new' allegations raised in a plaintiff's opposition to a motion to dismiss are not considered when resolving a motion to dismiss.") (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018)).

Moreover, Plaintiff claims that Defendant Axium's use of the Package Insert "falsely impl[ies] its applicability and validity to" their drug testing kits because Defendants "failed to conduct any form of [the stated] analytical testing for the component parts." (FAC ¶ 46.)

But as Defendants note, the facts alleged do not support that the Package Insert, or any information conveyed therein, is actually conveyed to consumers for the purpose of influencing their purchasing decisions.  *See Ariix, LLC*, 985 F.3d at 1115.  Because consumers only have access to the Package Insert *after* they have purchased Defendant Axium's drug testing kits, the allegedly false statements in the Package Insert do not constitute "commercial advertisement about [Defendants'] own . . . product."  *BHRS Grp., LLC v. Brio Water Tech., Inc.*, 553 F. Supp. 3d 793, 799 (C.D. Cal. 2021) (citation omitted); *see JHP Pharms.*, 52 F. Supp. 3d at 1003 ("Thus, to succeed on its claims [a plaintiff] must allege facts tending to show that the message 'our product is FDA-approved' was actually conveyed to consumers . . . .").  Accordingly, Defendant Axium's alleged statements in the Package Insert do not support a false advertising claim under the Lanham Act.

Unlike Plaintiff's allegations concerning the Package Insert, Plaintiff asserts that Defendants' statements that its drug testing kits are "FDA approved" and "Made in the USA" were made on Amazon and Walmart's websites.  (FAC ¶¶ 3, 20.)  Such statements were therefore made in commercial advertisement or promotion.  *See United States v. Sutcliffe*, 505 F.3d 944, 952-53 (9th Cir. 2007) ("[T]he Internet is an instrumentality and channel of interstate commerce.") (cleaned up).  Thus, Plaintiff's allegations concerning such statements sufficiently satisfy the second element of its Lanham Act claim.

### c.  Injury

Defendants argue that Plaintiff "vaguely reference[s] 'Defendants' actions" or conduct without identifying the purported harm to Plaintiff that gives rise to the causes of action."  (Doc. 18 at 25.)  Although Defendants assert this argument against Plaintiff's claims under the FAL and the ICPA, the Court addresses it as part of its current analysis. *See Allergan*, 364 F. Supp. 3d at 1108 ("Claims under the FAL are substantially congruent to those under the Lanham Act.").

Under the Lanham Act, a plaintiff must "plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations."  *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-cv-00253-

22

WHO, 2016 WL 6393503, at *4 (N.D. Cal. Oct. 28, 2016) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014)).  Lost sales for the plaintiff because of the defendant's false advertising is the "paradigmatic direct injury from false advertising." *Id.* at *5 (quoting *Lexmark Int'l*, 572 U.S. at 134).

The Court finds that Plaintiff has adequately alleged injury caused by Defendants' allegedly false advertising.  Plaintiff alleges that as a result of the advertisements, it has suffered a significant loss of sales and market share that it would have otherwise earned. (FAC ¶ 63.)  Plaintiff also claims that the advertisements have damaged its reputation and standing in the industry.  (*Id.*)  Such allegations are sufficient to plead damages.  *See Openwave Messaging, Inc.*, 2016 WL 6393503, at *5, (allegations that defendant's false advertisement caused "potential customers to mistakenly turn to [defendant] when seeking [plaintiff's] products and services, and the sales or inquiries of [defendant's] products resulting from this false advertising should rightly have gone to [plaintiff]" were sufficient to establish proximate cause and injury for the purposes of a motion to dismiss); *Luxul Tech., Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1169 (N.D. Cal. 2015) (allegations that defendant's "misrepresentations regarding the source of LED tube lamps resulted in harm to distinctiveness of Plaintiff's product, brand, good, and reputation," and the "likelihood of commercial injury based on Defendants' misbranding of Luxul products" was sufficient to show injury).  Thus, Plaintiff has satisfied the fifth element of its Lanham Act claim.

### d.  Conclusion

Based on the foregoing reasons, the Court finds that Plaintiff has sufficiently stated a false advertising claim under the Lanham Act and the FAL based on Defendants' alleged statements about their drug testing kits being "FDA approved" and "Made in the USA." Accordingly, the Motion is **DENIED** as to the Second and Fourth Causes of Action.

However, Plaintiff failed to plead that the alleged statements in the Package Insert constituted commercial advertising to state a false advertising claim.  To the extent the Second and Fourth Causes of Action are premised on the alleged statements in the Package Insert, the Motion is therefore **GRANTED**.

23

### 2. Consumer Protection Claims

#### a. UCL (First Cause of Action)

Plaintiff alleges that Defendants' allegedly false advertisements violate the FAL and thus constitute an unlawful business practice under the UCL.  (FAC ¶ 73.)  Plaintiff also alleges that Defendants violate California's Sherman Law by manufacturing and selling drug testing kits that have not been approved by the California Department of Health Services or the FDA and therefore such sales are actionable under the UCL as an unlawful business practice.  (*Id*. ¶ 71.)  Defendants seek to dismiss Plaintiff's UCL claim, arguing that Plaintiff does not "even state 'threadbare recitals of the elements of the cause of action.'"  (Doc. 18 at 22–23 (quoting *Iqbal*, 556 U.S. at 678).)

"The UCL prohibits 'any unlawful, unfair or fraudulent business act or practice.'" *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (quoting Cal. Bus. & Prof. Code § 17200).  An "unlawful" practice under the UCL is "anything that can properly be called a business practice and that at the same time is forbidden by law."  *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (cleaned up).  Thus, "to state a claim under the unlawful prong of the UCL, a plaintiff must sufficiently plead a predicate violation."  *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1097 (N.D. Cal. 2014). The "unfair" prong of the UCL "prohibit[s] not only advertising which is false, but also advertising which[,] although is true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1173 (2018) (citation omitted).

Alleged violations of the Lanham Act and the FAL can serve as a predicate basis for a claim of unlawful and unfair practices under the UCL.  *Lona's Lil Eats, LLC v. DoorDash, Inc.*, Case No. 20-cv-06703-TSH, 2021 WL 151978, at *13 (N.D. Cal. Jan. 18, 2021); *see Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002) ("[A]ny violation of the false advertising law necessarily violates the UCL.") (cleaned up).  Moreover, a violation of the FAL generally is also a violation of the "fraudulent" prong of the UCL.  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017).  California's Sherman Law can

also serve as a predicate for an unlawful practice claim under the UCL. *Allergan USA, Inc. v. Prescribers Choice, Inc.*, 364 F. Supp. 3d 1089, 1104 (C.D. Cal. 2019) (citing *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1091 n.13 (2008)).

Here, Plaintiff alleges that Defendants are violating the FAL by falsely advertising its drug testing kits as "FDA approved" and "Made in the USA." (FAC ¶ 73.) Because Plaintiff has stated claims for false advertising under the Lanham Act and the FAL (*see supra* IV.C.1), it has also stated a UCL claim under all three prongs.

Additionally, Plaintiff also plausibly alleges that Defendants are violating California's Sherman Law and other California regulations by failing to satisfy medical device-approval requirements and falsely advertising their drug testing kits. (FAC ¶¶ 11, 71.) The Sherman Law provides that "[n]o person shall sell, deliver, or give away any new . . . device" that has not been approved by the California Department of Health Services or the FDA. Cal. Health & Safety Code § 111550(a)–(b). As previously discussed, Plaintiff has sufficiently alleged that Defendant Axium is selling its own drug testing kits with components that are not approved by either agency. (*See supra* IV.C.1.a.) The Court therefore finds that, at the pleading stage, Plaintiff has pled sufficient facts to show Defendants engaged in "an act or practice, committed pursuant to business activity, that is at the same time forbidden by law." *Bernardino v. Planned Parenthood Fed. of Am.*, 115 Cal. App. 4th 322, 351 (2004).

Defendants raise the same arguments as they did for Plaintiff's false advertisement claims, including that: (1) Defendant Axium received a CLIA certification from the FDA to sell its drug testing kits; and (2) the unlawful claim is predicated on alleged violations of the Sherman Law based on Defendant Axium's use of the Package Insert but Plaintiff fails to explain "how that could constitute a false statement to a prospective consumer when

it is, by definition, inside the packaging." (*Id.* at 23.)  However, Defendants' arguments are unpersuasive for the reasons previously stated.  (*See supra* IV.C.1.a.)[7]

The Motion is therefore **<u>DENIED</u>** as to the UCL claim.

### b.  Idaho Consumer Protection Act (Third Cause of Action)

The ICPA protects both consumers and businesses against unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce. Idaho Code § 48-603.  Like Plaintiff's consumer protection claims under California law, "[a]n act or practice is unfair if it is shown to possess a tendency or capacity to deceive consumers."  *Roost Project, LLC v. Andersen Constr. Co.*, 437 F. Supp. 3d 808, 827 (D. Idaho 2020) (quoting *Kidwell v. Master Distribs., Inc.*, 101 Idaho 447, 453 (1980)); *see Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1173 (2018) (noting that the UCL prohibits advertising that "is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.").

Defendants argue the ICPA claim fails because Plaintiff "vaguely reference[s] 'Defendants' actions' or conduct without identifying the purported harm to Plaintiff that gives rise to" an ICPA claim.  (Doc. 18 at 24.)  However, for the reasons previously discussed (*see supra* IV.C.1.c), Plaintiff has sufficiently alleged that its harm was caused by Defendants' allegedly false advertising to consumers.  *See Kidwell*, 101 Idaho at 454 ("Actual damage to the public need not be shown to establish a trade practice as unfair or deceptive if it is shown that the practice possesses a tendency or capacity to deceive."); *In*

---

[7] Defendants' argument concerning the Package Insert is inapplicable to Plaintiff's UCL claim based on violations of the Sherman Law because this claim does not require allegations of fraud or deception.  *See Brinkerhoff v. L'Oreal USA, Inc.*, 417 F. Supp. 3d 1308, 1314 (S.D. Cal. 2019) ("Plaintiff need not plead reliance because neither the alleged FDCA violation nor the alleged Sherman Law violation requires allegations of fraud or deception."); *Allergan USA Inc. v. Imprimis Pharms., Inc.*, Case No. SA CV 17-1551-DOC (JDEx), 2017 WL 10526121, at *12 (C.D. Cal. Nov. 14, 2017) (finding defendant's "actual reliance" argument was irrelevant to the unlawful business practices claim under the UCL which was based on violations of the Sherman Act).

*re W. Acceptance Corp., Inc.*, 788 P.2d 214, 216 (Idaho 1990) (holding the ICPA must be "liberally construed to effect the legislative intent to deter deceptive or unfair trade practices and to provide relief for consumers exposed to proscribed practices.").

Further, Defendants summarily argue that Plaintiff's ICPA claim fails because it is untimely under Idaho law. (Doc. 18 at 24.)  Section 48-619 of the ICPA provides that "no private action may be brought under this act more than two (2) years after the cause of action accrues."  In their Motion, Defendants do not provide further explanation or argument to support that Plaintiff's claim under the ICPA is rendered untimely.  As Defendants failed to develop their argument, the Court considers it waived.  *See Khademi v. South Orange Cnty. Cmty. College Dist.*, 194 F. Supp. 2d 1011, 1027 (C.D. Cal. 2002) ("A judge is . . . neither required to hunt down arguments [the parties] keep camouflaged, nor required to address perfunctory and undeveloped arguments . . . [T]o the extent that [Defendants] failed to develop any additional argument or provide any legal support for them, [it] has waived them.").

Accordingly, the Motion is **<u>DENIED</u>** as to the Third Cause of Action.

### 3.    IIPEA (Fifth Cause of Action)

Defendants argue that Plaintiff's intentional interference with prospective economic advantage claim fails because Plaintiff does not identify any economic benefits it was likely to receive. (Doc. 18 at 18–20.)  The Court agrees.

To allege a claim for intentional interference with prospective economic advantage, a plaintiff must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional [wrongful] acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008).

As to the first element, a plaintiff must allege "a 'particular relationship or opportunity with which the defendant's conduct is alleged to have interfered' rather than

vague allegations regarding a relationship with an 'as yet unidentified' customer." *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 961 (S.D. Cal. 2021) (quoting *Weintraub Fin. Servs., Inc. v. Boeing Co.*, Case No. CV 20-3484-MWF (GJSx), 2020 WL 6162801, at *8 (C.D. Cal. Aug. 7, 2020)).  To allege an economic relationship, "it must be reasonably probable the prospective economic advantage would have been realized but for defendant's interference."  *Id*. (quoting *Song v. Drenberg*, No. 18-CV-06283-LHK, 2019 WL 1998944, at *7–8 (N.D. Cal. May 6, 2019)).

In its Opposition, Plaintiff contends that it has adequately pled "a colorable economic relationship" with "all customers who purchase drug test kits on Amazon.com, and was likely to enter into actual relationships with a certain percentage of such potential customers." (Doc. 19 at 18.)  However, such "'a hope of future transactions' is insufficient to support a claim of tortious interference."  *Soil Retention Prods., Inc.*, 521 F. Supp. 3d at 961 (quoting *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1140 (S.D. Cal. 1998).  "Plaintiff must establish an actual economic relationship or a protected expectancy with a third person, not merely a hope of future transactions."  *Brown*, 17 F. Supp. 2d at 1140.  For example, the court in *Song* dismissed an IIPEA claim where the plaintiff "merely allege[d] interference with possible business contracts," and failed "to name a single entity or person" or point to any particular opportunity that was disrupted by the defendant's alleged conduct.  2019 WL 1998944, at *8.  Instead, the court noted that the complaint only made "sweeping generalizations lacking any detail about the loss of prospective business opportunities."  *Id*. at *7.

In this case, Plaintiff generally alleges that it had economic relationships with third party customers and "a reasonable expectancy of profit to be derived as a result of its" drug testing kit sales via Amazon and Walmart's websites.  (FAC ¶¶ 110, 112.)  But Plaintiff does not allege any facts to support that there was a reasonable probability that any purchasers of drug testing kits on the Amazon website would purchase Plaintiff's drug testing kits but for Defendants' alleged interference.  The Court therefore finds that Plaintiff fails to plausibly allege a "particular relationship or opportunity with which

28

[Defendants'] conduct is alleged to have interfered." *See Soil Retention Prods., Inc.*, 521 F. Supp. 3d at 961.    Accordingly, Plaintiff's Fifth Cause of Action for IIPEA is **<u>DISMISSED</u> with leave to amend**.

### 4.    Alter Ego

Plaintiff brings all five causes of action against both Defendant Axium and Defendant Salvatore.  (*See* FAC ¶¶ 67–116.)  Defendants argue that Plaintiff fails to state a claim against Defendant Salvatore because its alter ego claims "fail to meet the minimum pleading standards to establish [Defendant] Salvatore is the alter ego of [Defendant] Axium, and vice versa."  (Doc. 18 at 18–19.)

Courts "'apply the law of the forum state in determining whether a corporation is an alter ego' of an individual." *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) (quoting *Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1391 (9th Cir. 1993)).  Alter ego liability allows a plaintiff to "pierce the corporate veil" and hold a corporate actor or parent corporation liable for conduct of the corporation or subsidiary.  *Stark v. Coker*, 129 P.2d 390, 394 (Cal. 1942).  Disregarding the corporate form, however, is an "extreme remedy, sparingly used." *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 539 (2000).

To state a plausible claim of alter ego liability against Defendant Salvatore, Plaintiff "must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1072 (9th Cir. 2015) (citation omitted).  Factors used to support the first element, unity of interest, include:

> [C]ommingling of funds, failure to maintain minutes or adequate corporate records, identification of the equitable owners with the domination and control of the two entities, the use of the same office or business locations, the identical equitable ownership of the two entities, the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual, and the failure to adequately capitalize a corporation.

*Pac. Mar. Freight, Inc. v. Foster*, No. 10–cv–0578–BTM–BLM, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24, 2010) (citing *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838–40 (1962)). "The identification of the elements of alter-ego liability plus two or three factors has been held sufficient to defeat a 12(b)(6) motion to dismiss." *Id.* (citing *Federal Reserve Bank of San Francisco v. HK Sys.*, No. C–95–1190, 1997 WL 227955, at *6 (N.D. Cal. Apr. 24, 1997)). Under Ninth Circuit precedent, "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control" to satisfy the alter-ego test. *Ranza*, 793 F.3d at 1073; *see also Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("[T]he mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law.").

Here, Plaintiff alleges that Defendant Salvatore is the sole founder of Defendant Axium and operated the company from June 20, 2016 through November 2, 2019 without appointing any other corporate officers, directors, a board of directors, or a registered agent for service of process. (FAC ¶ 26.) Plaintiff also alleges that Defendant Axium never issued any common stock, never held any shareholder or board meetings, and did not file a yearly Statement of Information with the California Secretary of State. (FAC ¶¶ 26–27.) According to Plaintiff, Defendant Salvatore and his wife, Diana Motina, were Defendant Axium's only employees and were paid as independent contractors. (*Id.* ¶ 27.) Plaintiff adds that, on information and belief, "Defendant Salvatore used Defendant Axium to pay for personal expenditures, including his wife's, that had nothing to do with any business operation." (*Id.*) Based on these allegations, Plaintiff has at a minimum pled a disregard for corporate formalities and commingling of funds. The Court finds this is sufficient to allege a unity of interest. *See Pac. Mar. Freight, Inc.*, 2010 WL 3339432, at *7 ("Sole ownership alone is often enough to defeat a motion to dismiss, and when taken with the commingling of funds, [the plaintiff] has sufficiently pled a unity of interest between [the individual defendant] and [the corporate defendant]").

As to the second element, Plaintiff must also allege that an inequitable would result in the recognition of the corporate form. *See Ranza*, 793 F.3d at 1073. "Inequitable results flowing from the recognition of the corporate form include the frustration of a meritorious claim, perpetuation of a fraud, and the fraudulent avoidance of personal liability." *Pac. Mar. Freight, Inc.*, 2010 WL 3339432, at *7. Here, Plaintiff alleges that "adherence of the fiction of a separate existence of Defendant Axium business entity and Defendant Salvatore would permit an abuse of the corporate privilege, and would sanction and promote injustice." (FAC ¶ 28.) Defendants argue that "Plaintiff's allegations to support its alter ego theory are conclusory and recitations of the law, and therefore, Plaintiff's FAC fails to state a claim upon which relief could be granted." (Doc. 18 at 19.) However, the Court finds alter ego liability is not applicable or necessary in this case because Plaintiff sufficiently pleads that Defendant Salvatore himself committed tortious acts that would expose him to personal liability as a corporate director.

"A corporate 'officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985). In this case, all five of Plaintiff's claims are based on alleged actions taken by Defendant Salvatore who is Defendant Axium's CEO, CFO, and sole director. (*See* FAC ¶¶ 25, 37.) As Defendant Salvatore is the sole actor of Defendant Axium, Plaintiff sufficiently alleges he was a participant in all alleged tortious conduct. As a result, Defendant Salvatore "will not be able to 'hide behind [Defendant Axium's] corporate form' for [his] own alleged tortious actions." *A-Tek Mech., Inc. v. KHW Servs., Inc.*, Case No.: 3:21-cv-01974-H-WVG, 2022 WL 3044815, at *11 (S.D. Cal. Aug. 2, 2022), *on reconsideration in part*, No. 3:21-CV-01974-H-DDL, 2022 WL 18635745 (S.D. Cal. Oct. 13, 2022) (quoting *Hawes v. Kabani & Co., Inc.*, 182 F. Supp. 3d 1134, 1144 (W.D. Wash. 2016)); *see Coastal Abstract Serv., Inc. v. 1st Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (finding a jury could find the corporate defendant's officer liable for an actionable statement under the Lanham Act).

31

1    Accordingly, Plaintiff's claims may be asserted against Defendant Salvatore directly

2    and Defendant Salvatore may be held personally liable for such claims without the need to

3    show alter ego liability.   The Motion is therefore **<u>DENIED</u>** as to the claims against

4    Defendant Salvatore in his individual capacity.

5    **D.    Rule 12(f)**

6    Plaintiff seeks punitive damages, in an amount to be proven at trial, for Defendants'

7    alleged intentional interference with a prospective economic advantage.   (FAC ¶¶ 114,

8    116.)  Defendants move to strike Plaintiff's request for punitive damages from the FAC.

9    (Doc. 18 at 25–26.)   Defendants argue that Plaintiff fails to state a claim which could

10   support its punitive damages request and does not "plead facts showing acts that plausibly

11   show oppression, fraud or malice" as required under California law.  (*Id.*)

12   As an initial matter, "Rule 12(f) does not authorize district courts to strike claims for

13   damages on the ground that such claims are precluded as a matter of law." *Whittlestone,*

14   *Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).  Under Rule 12(f), the Court

15   "may strike from a pleading an insufficient defense or any redundant, immaterial,

16   impertinent, or scandalous matter."  The function of a motion to strike pursuant to Rule

17   12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious

18   issues by dispensing with those issues prior to trial." *Whittlestone, Inc.*, 618 F.3d at 973

19   (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993)).  "Motions to strike

20   are generally viewed with disfavor and will usually be denied unless the allegations in the

21   pleading have no possible relation to the controversy and may cause prejudice to one of

22   the parties." *Sliger v. Prospect Mortg., LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011).

23   In the Motion, Defendants argue that Plaintiff's allegations are insufficient to state

24   an IIPEA claim but do not identify any prejudice they would suffer if the request for

25   punitive damages remains or explain how striking Plaintiff's request would streamline the

26   case. (Doc. 18 at 25–26.)  Thus, Defendants' request to strike under Rule 12(f) constitutes

27   "an attempt to have certain portions of [the FAC] dismissed or to obtain summary judgment

28

against [Plaintiff] as to those portions of the suit—actions better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion." *Whittlestone, Inc.*, 618 F.3d at 973.

Defendants also argue that Plaintiff's allegations are insufficient under California Civil Code § 3294 to give rise to punitive damages. (Doc. 18 at 25–26.) However, "the Federal Rules of Civil Procedure govern the punitive damages claim procedurally with respect to the adequacy of the pleadings." *Terpin v. AT and T Mobility LLC*, 118 F.4th 1102, 1112 (9th Cir. 2024); *see Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1018 (S.D. Cal. 2010) ("It is well-established that federal courts sitting in diversity must apply state substantive law and *federal* procedural rules.") (emphasis in original). Indeed, "California Civil Code section 3294 is a state procedural rule not implicated in federal court." *Waryck v. Thor Motor Coach, Inc.*, No. 22-CV-1096-L-KSC, 2023 WL 4166098, at *2 (S.D. Cal. June 23, 2023) (quoting *Strojnik v. Braemar P'ship*, No. 19-CV-01446-BAS-AHG, 2020 WL 3250184, at *3 (S.D. Cal. June 16, 2020) (cleaned up). Under Rule 9(b), the applicable federal pleading standard, "a plaintiff may include a short and plain prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *Clark*, 106 F. Supp. 2d at 1018; Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Although the Court dismissed Plaintiff's IIPEA claim with leave to amend (*see* .IV.C.2.c.), Plaintiff clearly requests punitive damages and has sufficiently alleged that Defendants acted with "malice, oppression, fraud, or reckless disregard." (FAC ¶ 114.) Accordingly, Defendants' Rule 12(f) Motion to Strike is **DENIED**.

## V. **CONCLUSION**

Based on the foregoing, Defendants' Motion (Doc. 18) is **GRANTED** in part and **DENIED** in part. Specifically:

1. The Court **DENIES** Defendants' Motion Pursuant to Rule 12(b)(1).

2. The Court **DENIES** Defendants' Motion under Rule 17(a) for failure to prosecute in the name of the real party in interest.

3:23-cv-01990-RBM-JLB

3.  The Court **<u>DENIES</u>** Defendants' Motion as to the UCL claim (First Cause of Action).

4.  The Court **<u>DENIES</u>** Defendants' Motion as to the FAL claim concerning Defendants' alleged statements that its drug testing kits are "FDA approved" and "Made in the USA" (Second Cause of Action).

5.  The Court **<u>GRANTS</u>** Defendants' Motion as to the FAL claim concerning Defendants' alleged use of the Package Insert (Second Cause of Action).

6.  The Court **<u>DENIES</u>** Defendants' Motion as to the ICPA claim (Third Cause of Action.

7.  The Court **<u>DENIES</u>** Defendants' Motion as to the Lanham Act claim concerning Defendants' alleged statements that its drug testing kits are "FDA approved" and "Made in the USA" (Fourth Cause of Action).

8.  The Court **<u>GRANTS</u>** Defendants' Motion as to the Lanham Act claim concerning Defendants' alleged use of the Package Insert (Fourth Cause of Action).

9.  The Court **<u>GRANTS</u>** Defendants' Motion as to the IIPEA claim (Fifth Cause of Action).  This claim is **<u>DISMISSED</u> with leave to amend**.

10. The Court **<u>DENIES</u>** Defendants' Motion to Strike Pursuant to Rule 12(f).

Plaintiff may file an amended complaint **<u>on or before October 17, 2025</u>** solely to correct the deficiencies identified above.[8]  If Plaintiff does not amend and proceeds only on the remaining claims, Defendants must file an Answer **<u>on or before October 31, 2025</u>**.

**IT IS SO ORDERED**.

DATE:  September 25, 2025

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[8] If Plaintiff amends, as permitted, and Defendants move to dismiss again rather than filing an Answer, the Parties must contact the assigned Magistrate Judge to proceed with an Early Neutral Evaluation, Case Management Conference, and discovery.

3:23-cv-01990-RBM-JLB